Next case this morning is case number 4140124 People v. Jake for the appellant Levi Harris for the appellate David Manchin. Please proceed. Your honors, I'm assistant appellate defender Levi Harris and I'm here as you said on behalf of the appellant Treshaun Jake. May it please the court. Today we ask this court to reverse Treshaun's conviction for first degree murder and to remand either in the first part of the argument for a motion to quash and suppress or in the rest of the argument for a new trial due to denial of the Sixth Amendment right to effective assistance of counsel. We also ask in the other parts of our brief to reduce Treshaun's sentence or to remand for resentencing but unless the court has specific questions about that I'll confine my argument to the first counsel issue. Treshaun received ineffective assistance of counsel under the Sixth Amendment. As we know, the Sixth Amendment requires that counsel, there's two prongs to effective assistance of counsel. The first is that counsel's performance was objectively unreasonable and the second is that that prejudiced the defendant. In this case there are three specific failures. There was a failure by counsel to move to quash and arrest and suppress evidence, there was a failure to object to prejudicial hearsay and there was a failure to perfect impeachment by omission that would have allowed the significant impeachment to be used as substantive evidence. Counsel, before you get into all the details of your argument, why wouldn't this be best left for a post-conviction petition? Your Honor, there are a couple of reasons. First of all, I believe there's everything in the record that we need, that you need, I'm not making the decision, but that you need to make the decision about whether counsel was ineffective or not. Always in a post-conviction petition, extraneous things would come out, but I don't think those things are necessary. How about trial counsel's testimony or affidavit or explanation or response to the allegations of ineffectiveness? I don't think there's any way to interpret these specific actions as having any basis that could be come up with. Well, the trial strategy is pretty broad, and it just seems that, and I don't want to cut you off here, it just seems that hearing from counsel may be something that the court would feel necessary before we could actually make a judgment on the issues you're raising. Having said that, go ahead. Well, Your Honor, like I said, you guys are the ones, excuse me, not you guys, Your Honors, are the ones who make this decision, but I'm here to convince you that you have everything that you need to make the decision now. The second thing, the second reason, is I have a lot of cases, I have one that's being litigated right now, where my client did wait, and it is a post-conviction proceeding, and then the state comes around and says, oh, no, that's forfeited because everything you needed was in the record. This is kind of a catch-22. I think that we're here litigating this because we believe that this is the right form and procedure to do it. So counsel's first error on the failure to move to quash this arrest and suppress the evidence. Treshawn was arrested the night of the shooting of the victim, Desiree Austin, without probable cause. Even the state, in closing argument, when it's reciting why he's arrested, she said he was standing and there were bullets around him, and he was standing next to the guy with the murder weapon. At the time, the police didn't even know this was a murder weapon. Certainly it was a weapon, and certainly when the police saw that weapon on the co-defendant, Anthony Meads, that was a perfect reason to arrest Anthony Meads. But that was not a reason to arrest Treshawn Jake, particularly when there was testimony that there were hundreds of people out there. This was just a big, unruly situation. So if you were arresting everyone who was standing next to bullets or standing near Mr. Meads, there would be a lot of people who were going to jail that night. So he's arrested without probable cause. They take him down to the station. They question him, and he gives a statement. Now if that statement had been the only statement, it would have been an exculpatory statement. But the state used it extensively. I just went back and re-read the closing argument this morning. For pages and pages it goes on about how there was the first statement, the second statement, and the third statement, and there were discrepancies between them. And there was no way that the taint from this illegal arrest was attenuated by the time that Treshawn gave the statement. As we know, there are four factors that we weigh when evaluating whether the taint is attenuated. The proximity in time, the intervening circumstances, the flagrancy of the police misconduct, and whether Miranda was given. In this case, the only one that counsels against the finding of the taint and for attenuation is that Miranda warnings were given. The proximity in time was he was taken down, he was immediately questioned, he immediately gave the statement, and he was taken home before the sun came up. There were no intervening circumstances. The police flagrancy, while they weren't beating him or torturing him in some way, there was also testimony from the officer that the reason he was arrested was to develop the case, to develop probable cause. So a motion to quash and suppress this evidence should have been made. Second of all, second error, counsel failed to object to prejudicial hearsay statements. First, by two police officers who were allowed to testify to the jury that on July 4th, the night we just talked about, and August 15th, a later date, that witnesses had identified Treshawn as, the first guy says, at the scene and present during the events, and the second guy said that, well, he was present during the shooting and was, in fact, the shooter. Now, those statements were not necessary for context of what was going on during this police investigation, and even in the course of the investigation exception, police officers are not allowed to testify as to the substance of the statements. They can say, well, we talked to some people, and based on what we found out, we went and did this. That's not what happened here. They testified to the substance of the statements of witnesses, and didn't even name the supposed witnesses, and in fact said at other points, well, you know, there weren't really any witnesses. But what it allowed to happen was to build up the story that from the very beginning Treshawn was being accused. Not only did these officers have hearsay statements that they brought in, but another witness, Renee Spondia, was allowed to testify to hearsay statements. She testified that she heard somebody who's not a party to this case, Antoine Anderson, tell my client Treshawn, bro, you shot that girl, and that Treshawn responded, I don't give an F. Now, that's not an excited utterance, and we litigated this in the briefs pretty extensively, but Antoine, this guy who supposedly began this statement, was a shooter. He was involved in this mob action. He was doing some shooting, and so we argue that if you're one of the ones doing the shooting, you can't be that excited when something happens as a result of that shooting. The second part of that is Renee's testified that this statement was supposedly made several minutes after the shooting had stopped. She went into her house. She hid with her children. Then she came back outside and supposedly heard this statement. So we don't believe it's an excited utterance exception, and we also don't believe that it's the tacit admission rule that could bring this in. There are problems with the tacit admission rule in criminal law, because it implicates the defendant's right to silence, and the tacit admission rule is not in the recently adopted rules of evidence in this state. So we talked about the motion to quash and suppress. We've talked about this prejudicial hearsay that counsel failed to object to. The third thing was that counsel failed to perfect impeachment by omission, which could have been used as substantive evidence of innocence. Renee Spondia, the woman we just talked about, said that she saw Treshawn shooting, and that she heard this conversation between Antoine and Treshawn. However, when she was asked about a statement that she made just two days after the shooting, she gave a description but omitted Treshawn's name, even though she said she'd known him for years. Oh yeah, he went to school with my little brothers. I know Treshawn. But she didn't give his name to the police. She's asked about the statement. She admits that she made a statement, but she insists that no, I did tell the police his name. She denied that she just gave a vague description of, well, he was a black man with braids and looked like this. So all that was out there in Renee's testimony. And then when the detective who could have proven up this impeachment was testifying, counsel didn't ask that detective, Detective Morris, about this statement that Renee had made. So there was imperfect impeachment by omission, and the case law says it's incumbent when you raise this, I guess part of it is just fairness to the witness, that when you raise an inference that they're lying or doing something like that, that you prove it. And counsel didn't do that here. But because he didn't, this also couldn't be used as substantive evidence of Treshawn's innocence. Now we know impeachment by omission arises when a witness omits a fact that would have been natural or likely to mention if it were actually in existence. In this case, she knew Treshawn, he went to school with her brothers, and when the police asked who did this, she said, well, I saw him, he was a black guy, he had braids, he was about this high, about this skin tone, didn't say anything about it being Treshawn. And yet that wasn't proven up, and so it couldn't be argued to the jury. So in sum, for these three reasons, the motion to quash failure, the hearsay failure, and the impeachment by omission failure, counsel rendered objectively unreasonable performance. The prejudice prong of the Sixth Amendment analysis requires that we evaluate whether it's reasonably likely that the outcome of the trial would have been different absent this evidence. The other question is, could the trial have been fair with what happened here? So first let's talk about the facts that are relevant to all three of these errors. There was no physical evidence that Treshawn was the shooter. No gunshot residue, no DNA, no anything like that. He had an alibi for the time of the shooting. Ms. Shalonda Foreman testified that she was driving him home from the fireworks at the time that the shooting took place. There was a reasonable explanation for the change in his stories from one to the other. First of all, I doubt anybody could give three consistent detailed statements over three months and get every detail correct. Second of all, even if he wasn't involved in this case, his friends were involved. His brother was involved in this case. So it doesn't make it right, it doesn't necessarily make him a good citizen, but there was a perfectly reasonable explanation for why he might have shaded the truth a little bit. Fourth, one of the eyewitnesses who was supposedly an intended victim didn't even identify Treshawn at trial. The ones who did, the witnesses who actually gave the eyewitness evidence against him, all had strong motives to lie or to shade the truth to protect these two guys, the intended victims, Johnny Campbell and Rejon Campbell. Recall that they were the ones who were supposed to get shot if anybody was, and the victim was actually an innocent bystander. There were .40 caliber shell casings behind where these brothers were hiding, yet supposedly they were not involved at all, they were not shooting, they were just innocent parties. These witnesses didn't come forward until several days later. A couple of them said they didn't even come forward until a week later. That gave them plenty of time to get their story straight so that they could protect these two brothers. The two brothers obviously had reasons to protect each other. Tiffany Dishman, who was another witness, had reason to protect them because they were her cousins. And Rene Spondia, who we've talked about extensively, had a child with Rejon and obviously wouldn't have wanted him to go to prison and not been there for a child. And the witnesses' testimonies differed. There was different testimony about how long this went on. One of them said it went on as long as 15 minutes, the other one said, well, it's 25 seconds. There was different testimony about what color of gun. There was different testimony about how many shooters there were. Some of them said, well, only Treshawn was shooting. Other people said there were lots of guns and lots of shooters. So the evidence, is what I'm getting at, was not overwhelming against Treshawn. Second, as to the prejudice prong on the suppression of the statement specifically, the state used these statements extensively in closing argument. And as I said when I mentioned it at the beginning, the statement in and of itself, it had to have been the only statement, was exculpatory. He didn't admit to any involvement in this. And he never did, by the way. At the end of it, he didn't admit that he was involved in the killing either. What the state was allowed to do was take three discrete exculpatory statements that in and of themselves were harmless and paint him out as a liar. And then the state says, well, this is convenient. What's he hiding? What's the real truth? So the state was able to use this to great extent. So the third thing on the prejudice, after we've talked about the balance of the evidence, we've talked about the prejudice of the suppression failure, is the prejudice of the hearsay statements. The state used those extensively in closing and rebuttal. The police statements that while lots of witnesses at this time were saying he was a shooter, raised this false specter that he had multiple accusers who were accusing him every step of the way, which just wasn't the case. And Renice's testimony about this out-of-court statement, bro, you shot that girl, I don't give an F, painted Treshawn as somebody who was accused, who acknowledged the truth of the accusation, and it also painted him as a monster who somehow shot this innocent bystander and was completely unmoved by it at all. So this was very prejudicial, and the state knew that, that's why they brought it in, and they made good use of it for their case. Finally, as to the prejudice of the failure to perfect impeachment, what you had in essence in Renice Fondia failing to identify Treshawn was an eyewitness who's saying Treshawn is not the guy. It was testimony substantive of innocence. And because counsel failed to perfect this impeachment, he couldn't get an instruction, a jury instruction, that would have allowed the jury to consider this as substantive evidence of innocence, and not only that, it would have cast doubt on her credibility as to the other things that she said, and it would have been the only eyewitness to differ significantly from what the other three said. So this in particular was very prejudicial. So your honors, I'm rapidly coming to my conclusion. We are here to contend that counsel was ineffective for the failure to quash this arrest and suppress the evidence, for the failure to challenge prejudicial hearsay, and for the failure to perfect this impeachment by omission by Renice Fondia that could have been used as substantive evidence of innocence. These were objectively unreasonable and it was prejudicial because the evidence here was far from overwhelming. We ask as to that first part on the motion to quash for reversal and remand for that motion to be litigated, and for the second two parts for reversal and remand for a new trial. Again, on the sentencing, which I'm happy to address if you want to, we just ask that the court, on the basis of the briefs, either reduce Mr. Jake's sentence or remand for resentencing. Thank you. I have a question about the sentencing part of it. It was addressed by the state to some extent, but in terms of the disparate sentencing argument that you make, the sentence that Anthony Meads received, is there anything in the record that would give us a sense of why the trial judge in that case sentenced him to 50 years? Your Honor, not to my recollection. Did Anthony Meads plead guilty or was he found guilty by a jury? He was found guilty by the jury, and in fact, this court did not court just reversed and remanded his case for a new trial on different grounds. So whatever sentence he has will probably be a different one if it gets that far. Thank you. Mr. Manchin. Good morning, Your Honors. Good morning. I've been fighting a sinus infection and it's landed in my throat this morning, so I'll try to do the best I can. As far as the effective assistance of counsel, I think, Justice Attorney, you're correct. This is a case where requiring the defendant to raise a post-conviction petition is appropriate. Not only do we not have counsel's thoughts as to things, there are a lot of facts that are not in the record regarding some of the issues raised by the defendant.  All the facts regarding the allegedly inconsistent statement are not in the record. We don't know what she told the police, how inconsistent it was, whether counsel was afraid of presenting her statement for fear of bringing in the consistent parts. So there's just a lot of information that's not available here so that this would be a better case for post-conviction. On this record, though, this court could find that there was effective assistance of counsel. All the issues raised by the defendant's objection to motion to suppress, objection to hearsay, completion of impeachment are all matters of judgment and strategy. There's a strong presumption that the counsel's decisions are would fall within the realm of professional assistance and that a choice is a mistaken strategy is ineffective assistance only if no reasonable attorney would take the same view. I think in this case, all of the decisions made by counsel fall well within the realm of judgment. Regarding the motion to suppress, why in the world would the counsel want to suppress a statement that is favorable to the defendant? That is, the only way he can get this statement in is if the state persists. And it is highly favorable to the defendant and it was the defendant points out that the state's attorney relied upon the defendant's statements heavily in his closing argument. The defense counsel relied just as heavily on those statements in his closing argument and said, yeah, this is the truth. Look at what he said. He was consistent about what he said and he was consistent with this even when he was confronted with a lie that depleted information against him. This was a matter of judgment and strategy on the part of the counsel to get very favorable information in front of the jury. The only prejudice the defendant suggests is the inconsistency that arose in the defendant's third statement. That inconsistency would be present and would have been presented to the jury even if that first statement was never brought out. So that the prejudice the defendant relies upon is present with or without the statement. So counsel could reasonably determine that even though there's this danger of impeachment, the value of this statement I wasn't there, I don't know nothing, I came after the shooting was all over, was just so great that there is a reasonable decision on his part. And excluding this first statement could not have changed the result in any sort of form because as I said the prejudice from the impeachment is present even without that statement. Regarding the hearsay objections, that conversation, brother you shot her, I don't care, that is in fact admissible as a tacit admission. There is no first, there is no right to silence in everyday conversation that is protected by the Constitution. The Powell case cited by the defendant only dealt with the situation where they were trying to use the defendant's tacit silence when he was being questioned by a police officer at a police station. Saying that in that situation the defendant has a right to silence so that his failure to answer the accusation of a crime doesn't mean anything or it was just an exercise of that right so it could not be used. That is simply not the case where you have a conversation in everyday life right there at the scene. And the defendant's suggestion that the new rules of evidence bar this type of testimony I think should be rejected. If you look at rule 801 of the rules of evidence, that is the definition has a listing of what evidence is not hearsay. One of those items is statements by a party opponent. This conversation, bro you shot her, I don't care or I don't give a fuck is a statement by a party opponent. So it would be admissible under rule 801. So to say that the tacit admission rule has been rejected or has been somehow done away with by the rules of evidence just simply is not true. All the requirements for a tacit admission are present here. A tacit admission is an accusation made to the defendant that he committed a crime that is heard by the defendant and a normal innocent person in that situation would deny the accusation. This whole conversation falls well within this term. So there was no basis for an objection to that hearsay so there could be no ineffective assistance. I also submit that this, even if not admissible as a tacit admission, it is a excited utterance. Defendants suggest that you can't be excited because you just shot somebody. I don't know, even if you're the shooter you're going to be excited in that situation where there's been the blaze of gunfire like this and there's really been no time for reflection in this scenario within a very short period of time. So it would be admissible under the theory that it was an excited utterance. There's simply no basis for objection by defense counsel so there could be no ineffective assistance based on the failure to object to that conversation. It was simply not hearsay. With respect to the statement made to the defendant, we have people who figured out for you that was not hearsay in the context in which it was presented. It was never offered for the truth of the matter asserted and in fact, with respect to that first statement, it could not have been admitted for the truth of the matter asserted because at the time during that first conversation the police said we have information linking you to the crime. That was a bald-faced lie. They had no information at all at that time. And defense counsel in his closing argument jumped all over this. We have information saying hey look, this proves that the defendant was telling the truth when he said I don't know anything. I came after this thing. Here the police are trying to trap him. They're lying to him. They're trying to get him to implicate himself and he stays strong with his story. I don't know anything. I was not involved. Again, a matter of tactics and strategy on the part of counsel. Do I want to object to this statement to the defendant we have information or do I want to use the fact that the defendant maintains his testimony in the face of this false accusation? Again, it does not establish an effective assistance to counsel. Within the context it was not hearsay and the counsel made a reasonable decision that hey, I'm going to make use of this. What we have here is an attorney who did an exemplary job representing the defendant. All the supposed weaknesses in the state's case were brought out by the defendant and if you transpose the defendant's argument in his closing argument at trial you could practically flip-flop him and not miss a beat. The suggestion that somehow the result would have been different had these tactical decisions been made differently it simply did not follow. With respect to the finishing the impeachment of this witness, again, we don't know what her statement to the police was. So we don't know what danger counsel faced by asking the officer okay, what did she tell you? He could have been opening a real can of worms as far as placing the alleged inconsistency in context and bolstering her testimony and fingering the defendant. It could well have been a tactical decision, okay, I've got her to admit making this prior statement. Why do I need to have the police officer come and testify to it too given the chances that it could backfire on me? Because if you read the whole line of questioning he does get her to admit that she said did you tell the police that you later learned that was the defendant? Yes. What further impeachment does he need? And the suggestion that counsel needed a instruction to the jury as to substantive use the jury was never instructed that prior inconsistent statements could only be used for a limited purpose, for purposes of impeachment. There's no such instruction. So there's nothing to prevent him from saying making whatever use he wanted of that, substantively or for purposes of impeachment, with or without it. So an instruction on the substantive use was simply not required because it was already before the jury for substantive purposes because there was no instruction limiting its purpose. It was there for whatever purpose that counsel might wish to be used. With respect to Justice Harris. With the failure to complete the impeachment, do you believe counsel could have argued that in the closing argument or would that have been objection to which? He could have argued it substantively because as I said, there was no instruction to the jury that there's been evidence that a witness has made a prior inconsistent statement. You're to determine if you made that statement and that statement can be used only for purposes of credibility. There is no such instruction. So without that instruction, it's open for fair game for whatever use you want to use it for. And Justice Harris, with respect to your question, there was no information regarding why the co-defendant got what sentence he did and the defendant never raised this sentencing disparity in his motion to withdraw, excuse me, to reduce sentence that he filed in this case. So that the claim of sentencing disparity is simply not properly before this court. Not only because it was never raised in the trial court, but because there is simply no basis for comparison to be made. All we have is a difference in sentence, but that in and of itself is without knowing why the co-defendant got what he did, there's no way to make a comparison. One final point in his reply brief, the defendant has suggested that it was ineffective assistance of counsel for his trial attorney not to bring up the co-defendant's sentence. That claim of ineffective assistance simply cannot be believed. If there are no further questions from the court, thank you. Thank you, counsel. Mr. Harris, do you have any rebuttal? I've got to say, I was a little startled and liked the sound of that Justice Harris business. Did I say Justice Harris? What's that? No, no, no, no. He's counsel said Justice Harris. Y'all are free to call me whatever you like. We don't believe that there's any reason that counsel didn't object to these things. We don't believe there's any strategic reason that he wouldn't challenge these things. What possible reason, for instance, could you have for not getting on the record a substantive evidence that a witness, an eyewitness who knew the defendant gave a statement two days afterwards that was evidence of his innocence? There's no possible reason for that. There's plenty on the record to make the decision we need. As to the closing argument about the exculpatory statement, they didn't just talk about, oh, the first and the second were the same, and then all the third, that was the one that made the difference, and so even with the second and the third, it would have been the same. There were discrepancies between the first and the second, too. Your Honors, we'll go to pages 19 through 21 of that portion of the record. State's attorney makes extensive use of this and says, well, how convenient. Why is he lying? And talk about that first statement for several paragraphs. So this wasn't an afterthought. Defense counsel used it and talked about it in closing argument because by that time the cat was out of the bag. You know, I'd hate to use this, but there's the saying, you go to war with the army you have. At that point, it was too late to do anything about these statements. As far as the tacit admission rule, even if Treshawn's statement could come in under that, Antwon's can't. Antwon is not a party opponent. There's no evidence that he's even charged with this case. So his statement, bro, you shot that girl, should not have come in. I don't think we suggested that the rules of evidence bar the tacit admission rule, just that they were not included. Again, I don't think excited utterance applies to this statement where it's several minutes later. And, you know, if you can imagine the movies, all the movies we've had of the gunfight at the O.K. Corral. Does every one of those guys' statements before and just after and during the shootout come in against every one of them? Sure, a guy's statement about himself that he gives can be admitted against him, but not against somebody completely different, which is what happened here. Counsel said that the... Well, let me read from page 7 real quickly of my reply brief. The officers didn't just testify that they said this stuff to Treshawn when they were questioning him. They testified to the jury that witnesses placed him at the scene and witnesses named him as a shooter. The opponent says, well, that wasn't even true. We don't give people a special reward for lying when they testify about hearsay statements. Finally, as to the impeachment of the witness, Renice, whatever risk counsel would have run by questioning the detective about this, he already ran by breaking up with Renice, so no point in not doing that. Counsel said, well, why do we need to have anybody testify about the substance? It's like saying, why do we need to have anybody testify? My client is innocent. We know what we need to do about this, because if counsel's implications about that statement were false, counsel would be unethical, and certainly nobody's saying that. He's not just making up stuff for impeachment. So we know what was in that statement. Finally, if I can do it quickly, does this mean two minutes or one? Well, when it first came on, you had two, but it's probably less than one. Okay. My opponent said that Renice admitted what counsel needed her to admit. She tripped up, is what she did. But she was adamant, she corrected herself, that she always knew that it was Treshawn, and that she did not tell police that she only later learned that Treshawn was the one shooting. So the fact that, oh, she's questioning, she slips up for a minute, that's not the point. She corrected herself, she stuck by her story, and we needed that substantive evidence as impeachment. Again, your honors, reverse and remand, and you're dismissed. Okay. Thank you, Mr. Harris. Thank you, Mr. Manchin. The case is submitted. The court stands in recess.